**Ralph DE VITA, Appellant,**

v.

**Arthur J. SILLS, as and for the State of New Jersey, Attorney General, James R. Giuliano, Superior Court Judge of the State of New Jersey, Joseph Weintraub, Chief Justice, Supreme Court of New Jersey, Nathan L. Jacobs, John J. Francis, Haydon Proctor, Frederick W. Hall, C. Thomas Schettino, Vincent S. Haneman, Justices of the Supreme Court of New Jersey.**

(D. C. Civil Action No. 2–70)

No. 18423.

United States Court of Appeals,
Third Circuit.

Argued Feb. 5, 1970.

Decided March 9, 1970.

Hyman Isaac and Barry M. Epstein, Reibel, Isaac, Tannenbaum & Epstein, Elizabeth, N. J., for appellant.

Stephen Skillman, Asst. Atty. Gen., Trenton, N. J. (George F. Kugler, Jr., Atty. Gen. of New Jersey, Virginia Long Annich, Deputy Atty. Gen., Trenton, N. J., on the brief), for appellees.

Before FREEDMAN, ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of New Jersey denying plaintiff's application for a preliminary injunction. Federal jurisdiction was invoked under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. The application for a preliminary injunction was made on notice to the defendant respondents pursuant to Rule 65(a) (1), on a verified complaint to which no responsive pleading was filed. The order is appealable. 28 U.S.C. § 1292(a) (1). This court, acting pursuant to Rule 8, Federal Rules of Appellate Procedure, granted plaintiff *ad interim* relief pending a disposition of the appeal by a panel of this court.

Plaintiff, a member of the Bar of New Jersey, and a judge of the Union County District Court of New Jersey, seeks to enjoin the defendants the Attorney General of New Jersey; James R. Giuliano, a judge of the New Jersey Superior Court; and all the members of the Supreme Court of New Jersey, from proceeding with a judicial inquiry looking toward his disbarment and removal from judicial office. He alleges that a criminal indictment is pending in the Superior Court of New Jersey which makes essentially the same charges that are set forth in the civil proceeding for disbarment and removal, and that if the defendants are permitted to proceed with the latter before the completion of his trial on the criminal indictment, he will be deprived of civil rights guaranteed by

the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

Plaintiff's verified complaint establishes that Michael R. Imbriani, Prosecutor of Somerset County, New Jersey, disclosed to the Supreme Court of New Jersey in an affidavit that the plaintiff had offered him a bribe, described as "ten big ones", to influence Imbriani's handling of certain indictments then pending in Somerset County. On December 3, 1969 the supreme court issued the order here complained of, appointing Judge Giuliano as a Master to hear and make findings with respect to the following charges:

1. That he did corruptly attempt to bribe Honorable Michael R. Imbriani, Prosecutor of Somerset County, with respect to the Prosecutor's performance of his duties in relation to an indictment pending in Somerset County against Nicholas Guida, Jr., and David Tenney, Docket No. 9–59–S;

2. That the said Ralph DeVita did conspire with persons unknown to obstruct justice by bribing the said Prosecutor with respect to the handling of said indictment;

3. That the said Ralph DeVita did attempt to obstruct the administration of justice by attempting to bribe the said Prosecutor with respect to the said indictment.

The order provided the Master with the powers and authority vested by the New Jersey Rules of Court in an Ethics Committee. See N.J.R. 1:20. It appointed the Attorney General or such person as he might designate to prosecute the charges. It fixed January 6, 1970 as the time for the commencement of the hearing, directed that it be held *in camera*, and ordered the Master to send all testimony and exhibits to the supreme court with his findings and recommendations. The order also provided:

It is FURTHER ORDERED that any testimony given by the said respondent in these proceedings shall not be used against him in the trial of any indictment:

On December 9, 1969, the plaintiff applied to the New Jersey Supreme Court for a stay of the disciplinary proceeding before Judge Giuliano because an indictment was probably imminent, and the indictment should be tried before the disciplinary proceeding. The supreme court, by an order dated December 9, 1969, denied this application. On the same date it entered a separate order suspending the plaintiff from the practice of law and from the office of Judge of the Union County District Court pending final disposition of the charges set forth in the December 3, 1969 order.

On December 10, 1969, the State Grand Jury [1] handed up a two count indictment charging essentially the same misconduct as is set forth in the order for the disciplinary hearing. Plaintiff thereupon filed in the supreme court a petition seeking rehearing and reconsideration of its denial of his application for a stay of the disciplinary hearing. This application was denied by order dated December 17, 1969.

Thus, the disciplinary hearing before Judge Giuliano would have gone forward on January 7, 1970 in the state court had not this court by its order granted a stay pending appeal. There has been no trial of the criminal indictment.

The gravamen of plaintiff's complaint is that the time sequence of the disciplinary and criminal hearings which results from the supreme court's order is highly prejudicial, and that this prejudice is of constitutional dimensions. He asserts that holding the disciplinary hearing in advance of the criminal trial will coerce him to disclose his defense, in violation of the privilege against self-incrimination guaranteed by the Fifth Amendment. He claims that he has already been subjected to extensive pretrial publicity, and that additional publicity may result from the disciplinary proceeding, which may prejudice

---

1. N.J.Stat. § 2A:73A (Supp.1969).

the fair trial on the criminal indictment guaranteed by the Sixth and Fourteenth Amendments. He contends that the disciplinary hearing will afford to the state an opportunity to cross-examine his witnesses in advance of trial, and will reveal to the state the thrust of cross-examination of the state's witnesses by his counsel. This is alleged to deprive him of the effective assistance of counsel guaranteed by the Sixth Amendment, and to amount to impermissible self-incrimination prohibited by the Fifth Amendment. All these effects of the time sequence of the hearings are said to be violations of the Civil Rights Act, 42 U.S.C. § 1983, actionable in the United States District Court under 28 U.S.C. § 1343(3).

The appeal presents three questions:

(1) Is there equitable jurisdiction in the United States District Court to grant the injunctive relief sought in view of the provisions of 28 U.S.C. § 2283, the anti-injunction statute?

(2) Assuming such jurisdiction, is the case one in which the federal courts should abstain from deciding the case in deference to comity and state sovereignty?

(3) Assuming the case should be decided, does the complaint state a claim upon which injunctive relief should be granted under the Civil Rights Act?

## I. JURISDICTION

■ The Attorney General of New Jersey, appearing for all of the defendants, contends that 28 U.S.C. § 2283 deprives the district court of equitable jurisdiction to enjoin state court proceedings. That statute provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The plaintiff relies on 42 U.S.C. § 1983 as an instance of an injunction "expressly authorized by Act of Congress." That reliance is, in this circuit at least, well placed, for Cooper v. Hutchinson, 184 F.2d 119 (3 Cir. 1950) so holds. Vigliano v. Thevos, 390 F.2d 55 (3 Cir. 1968), cert. denied, 393 U.S. 897, 89 S. Ct. 161, 21 L.Ed.2d 178 (1968), is not contra. It assumes the rule of Cooper v. Hutchinson, *supra,* but declines relief on the basis of abstention.

In the absence of a controlling decision in the United States Supreme Court, Cooper v. Hutchinson, *supra,* may only be overruled by this full court sitting *en banc,* and this panel does not feel that there is any reason to request our brothers to convene an *en banc* court for that purpose. The decision has been criticized, in another circuit which reached an opposite result, for having " * * * stated its conclusion without elucidating the problem or its reasoning." Baines v. City of Danville, Va., 337 F.2d 579, 590 (4 Cir. 1964).[2] But the elucidation of reasons in Baines v. City of Danville, Va., *supra,* is not convincing, and the treatments of the problem in Sexton v. Barry, 233 F.2d 220 (6 Cir. 1956), cert. denied, 350 U.S. 838, 76 S.Ct. 75, 100 L.Ed. 747 (1955), and Smith v. Village of Lansing, 241 F.2d 856 (7 Cir. 1957), in which the Sixth and Seventh Circuits reached an opposite result, are as cryptic as that in Cooper v. Hutchinson, *supra.*[3]

2. A rehearing in Baines v. City of Danville, Va., 357 F.2d 756 (4 Cir. 1966), affirmed 384 U.S. 890, 86 S.Ct. 1915, 16 L. Ed.2d 996 (1966), deals with issues not related to 28 U.S.C. § 2283.

3. In Tyler v. Russel, 410 F.2d 490, 491 (10 Cir. 1969), the Tenth Circuit said "Section 2283 is not a jurisdictional statute but rather a limitation upon the exercise by a district court of its equity jurisdiction. * * * Our question is not whether § 2283 bars relief but whether the complaint alleges a basis for equitable relief. This must be determined by testing the complaint against the rules which have

The United States Supreme Court was aware of this circuit's holding in Cooper v. Hutchinson, *supra,* when it decided Stefanelli v. Minard, 342 U.S. 117, 72 S. Ct. 118, 96 L.Ed. 138 (1951). That was a suit to enjoin use in a state criminal trial of the fruits of an unlawful search and seizure. The same basis for federal jurisdiction was asserted as is asserted here. The Supreme Court could have reached the same result which it reached in Stefanelli v. Minard, *supra,* by over-ruling Cooper v. Hutchinson and holding that the anti-injunction statute applied and that the Civil Rights Act was not an instance of express congressional exception. Instead, it decided the case on an abstention basis. Abstention from the exercise of equitable jurisdiction would seem to assume the existence of such jurisdiction. In Dombrowski v. Pfister, 380 U.S. 479, 484, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965), the United States Supreme Court found it unnecessary to resolve the conflict between this circuit and others as to whether or not 42 U.S. C. § 1983 came under the "expressly authorized" exception in 28 U.S.C. § 2283.[4] Neither the legislative history[5] of the 1948 statute by which the "expressly authorized by Act of Congress" exception came into the Judicial Code, nor the language itself points in any particular direction for present purposes. We are satisfied that no opinion of the Supreme Court casts serious doubt upon the validity of the interpretation of 28 U.S.C. § 2283 adopted in Cooper v. Hutchinson, *supra.* See Wilson v. Schnettler, 365 U. S. 381, 388, 81 S.Ct. 632, 5 L.Ed.2d 620 (1960) (concurring opinion), and Rea v. United States, 350 U.S. 214, 219, 76 S. Ct. 292, 100 L.Ed. 233 (1956) (dissenting opinion).

We hold, therefore, that the district court has equity jurisdiction by virtue of 42 U.S.C. § 1983.

## II. ABSTENTION

Defendants next contend that, assuming such jurisdiction, well recognized principles of federal abstention make it inappropriate for this court to decide the merits of plaintiff's complaint. That doctrine has been applied frequently in cases where injunctive relief has been sought against threatened or pending criminal prosecution or against steps in such prosecution, allegedly violative of a federal right. Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632 (1961); Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Vigliano v. Thevos, 390 F.2d 55 (3 Cir. 1968), cert. denied, 393 U.S. 897, 89 S.Ct. 161, 21 L.Ed.2d 178 (1968).

While the doctrine has had an extensive application with respect to criminal prosecutions, it had its origin in a case involving state civil remedies, Railroad Comm'n. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and we may assume its application to the civil disciplinary proceeding involved here. Questions of abstention and of injunctive relief are said to be not the same, Zwickler v. Koota, 389 U. S. 241, 254, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), although the policy considerations underlying the abstention are close to those underlying the equitable rule withholding relief if there is an available legal remedy. See Tyler v. Russel, 410 F.2d 490, 492 (10 Cir. 1969). And the doctrine may have a narrower scope in civil rights cases under 42 U.S.C. § 1983 than otherwise. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

■ Abstention cannot apply here, however, for the fundamental considera-

---

been established to determine the power of a federal court to grant the equitable relief which is requested." The court held that the plaintiff had an adequate remedy at law in the state court, and that it should, therefore, deny equitable relief. Cooper v. Hutchinson, *supra,* is a narrow-

er basis of decision on the meaning of § 2283 and we need go no further.

4. 380 U.S. at 484 n. 2, 85 S.Ct. 1116.

5. The Reviser's Note, H.R.Rep.No.308, 80th Cong., 1st Sess. A181 (1947).

tion in exercising that discretion is the existence of a state forum in which the asserted federal right may be vindicated, or whose decision on a state law question may avoid a conflict with federal law. Here the asserted federal right is the sequence of hearings. The only relief sought by plaintiff is an order changing that sequence. The Supreme Court of New Jersey has finally determined the sequence of hearings, and there is no state forum to which the plaintiff can turn for reconsideration of that determination. We must, therefore, decide if the sequence of hearings is, as plaintiff claims, a violation of rights guaranteed by the United States Constitution.

### III. MERITS

We come, therefore, to the merits of the plaintiff's contention that the sequence of hearings ordered by the New Jersey Supreme Court:

(1) violates his privilege against self-incrimination in violation of the Fifth Amendment;

(2) will subject him to pretrial publicity which will prevent the fair trial guaranteed by the Sixth and Fourteenth Amendments;

(3) denies him the effective assistance of counsel and the fair trial guaranteed by the Sixth and Fourteenth Amendments.

Plaintiff's self-incrimination contention is based upon Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed. 2d 562 (1967); Spevack v. Klein, 385 U. S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) and Gardner v. Broderick, 392 U.S. 273, 278, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). *Garrity* held that the compulsion inherent in the threat of forfeiture of a policeman's job for failure to testify in a departmental disciplinary proceeding rendered that compelled testimony inadmissible in a subsequent criminal proceeding. *Spevack* reversed the decision of the New York Court of Appeals which had disbarred an attorney solely on the ground that he had, in

a disciplinary proceeding, asserted the privilege against self-incrimination in refusing to testify and to produce certain records. The Supreme Court reversed Cohen v. Hurley, 366 U.S. 117, 81 S.Ct. 954, 6 L.Ed.2d 156 (1960) which had affirmed a previous disbarment on a similar ground. In *Gardner,* a police officer refused to waive his privilege against self-incrimination and testify before a grand jury with respect to his official duties. He was discharged for such refusal, pursuant to a provision of the New York City Charter. The Supreme Court held the charter provision unconstitutional.

We need not decide whether or not Gardner v. Broderick, *supra,* applies to the office of a judge with equal force as to the office of a policeman, for it is clear from the court's order that the disciplinary proceeding is directed against plaintiff not only in his judicial capacity, but also as an attorney. The privilege applies in a proceeding to discipline an attorney and its assertion is not a ground for disbarment. Spevack v. Klein, *supra.*

If the order of the New Jersey Supreme Court were to direct plaintiff to testify in the disciplinary proceeding on pain that his assertion of the privilege against self-incrimination would result in his disbarment, the *Spevack* case would be in point. But the order does not so provide. It merely directs that Judge Giuliano hear and make findings with respect to the charges, with " * * * all the powers and authority vested by the Rules of Court in an Ethics Committee." The Rules of Court referred to are New Jersey Rules R.1:20-1 through R.1:20-10. There is nothing in these rules or in the court's order which would compel the plaintiff's testimony. There is nothing in the rules or the court order from which we can conclude that the plaintiff's failure to testify will be held a ground for disbarment or forfeiture of office. There is nothing before this court from which we can find that the state court will afford plaintiff any less than the full scope of Fifth

Amendment rights mandated by Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

■ Plaintiff points to the provision in the order " * * * that any testimony given by the said respondent in these proceedings shall not be used against him in the trial of any indictment." He contends that this grant of immunity is defective under the standards of Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892) and Murphy v. Waterfront Comm'n., 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Certainly the New Jersey Supreme Court is the final arbiter of its power to grant immunity under the broad administrative and rule making power granted in the Judiciary Article of the New Jersey Constitution.[6] And if immunity is granted on the state side it will be followed on the federal side, assuming any possible federal criminal violation. Murphy v. Waterfront Comm'n., *supra*. But in any event, the scope of immunity granted by the order would only be relevant if it were coupled with compulsion to testify. Here there is none, and by leaving plaintiff free either to assert the privilege against self-incrimination or to testify with immunity, the New Jersey Supreme Court has granted more than is constitutionally required. We can understand why it might want to do so in view of the position which plaintiff holds and the seriousness of the charges.

But, says the plaintiff, I will nevertheless be put to a difficult choice, and the Fifth Amendment should be so construed that one is not faced with the compulsion to add his own possibly affirmative good impression to weight of evidence in the disciplinary hearing before the criminal trial.

This argument proves too much, for it applies with equal force to every situation where civil and criminal proceedings may arise out of the same factual pattern. If, for example, the charge

against an attorney was embezzlement of a client's funds, acceptance of plaintiff's position would require that the wronged client await the completion of a criminal trial before he sought a civil recovery, because of the possible compulsion of the risk of a judgment. The same would be true of every defendant in a wrongful death action; of many taxpayers; of most antitrust defendants. The same would, indeed, be true if instead of a disciplinary proceeding we had before us a proceeding for impeachment of a judge by the New Jersey Legislature pursuant to Article VII, Section III of the New Jersey Constitution.

No authority has come to our attention for so broad a reading of the Fifth Amendment, and the countervailing possibilities of prejudice to civil litigants militates against any such extension of constitutional doctrine. Indeed, serious public prejudice would occur in this case by a delay in the determination of the plaintiff's status, since he has been suspended as a judge, and the populous County of Union suffers a judicial vacancy which may not be filled in the meantime. This consideration may well have been the reason for the prompt hearing ordered by the New Jersey Supreme Court.

■ Plaintiff can, of course, object to depositions or interrogatories directed against him in a civil action where the answers might incriminate him in a pending criminal case. Perry v. McGuire, 36 F.R.D. 272 (S.D.N.Y.1964); Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co., 14 F.R.D. 333 (E. D.Pa.1953); National Discount Corp. v. Holzbaugh, 13 F.R.D. 236 (E.D.Mich. 1952). But the contention that an actual or potential defendant in a criminal case should not even be put to the difficult choice of having to assert the privilege in a related civil case was rejected in United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 decided on February 24, 1970. In *Kordel* the Su-

---

6. N.J.Const. Art. 6, § 2(3). See Winberry v. Salisbury, 5 N.J. 240, 74 A.2d 406

(1950), cert. denied, 340 U.S. 877, 71 S. Ct. 123, 95 L.Ed. 638 (1950).

preme Court reversed the Sixth Circuit Court of Appeals, United States v. Detroit Vital Foods, Inc., 407 F.2d 570, which had reversed a criminal conviction for violation of the Federal Food, Drug and Cosmetic law on the ground that prior to the indictment the Government had, in a civil condemnation proceeding, served interrogatories. The defendants did not assert the privilege against self-incrimination in the civil case, but applied for a stay of the civil action, or of the answers to interrogatories, until after the disposition of the criminal case. When that relief was denied, the interrogatories were answered, and the answers provided information useful in the criminal case. The Supreme Court found the answers to have been voluntarily given, and rejected contentions similar to those advanced by plaintiff here, saying:

> The respondents urge that even if the Government's conduct did not violate their Fifth Amendment privilege against compulsory self-incrimination, it nonetheless reflected such unfairness and want of consideration for justice as independently to require the reversal of their convictions. On the record before us, we cannot agree that the respondents have made out either a violation of due process or a departure from proper standards in the administration of justice requiring the exercise of our supervisory power. The public interest in protecting consumers throughout the Nation from misbranded drugs requires prompt action by the agency charged with responsibility for administration of the federal food and drug laws. But a rational decision whether to proceed criminally against those responsible for the misbranding may have to await consideration of a fuller record than that before the agency at the time of the civil seizure of the offending products. It would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forgo recommendation of a criminal prosecu-

tion once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.

United States v. Kordel, *supra.*

In United States v. Simon, 373 F.2d 649 (2 Cir. 1967), cert. granted Simon v. Wharton, 386 U.S. 1030, 87 S.Ct. 1485, 18 L.Ed.2d 591, vacated as moot, 389 U.S. 425, 88 S.Ct. 577, 19 L.Ed.2d 653 (1967), three accountants who had been indicted for violations of the Securities Exchange Act objected to depositions being taken by the trustee in bankruptcy of the company to which the charges in the indictment referred. They contended that they did not want to plead the privilege against self-incrimination, but at the same time they did not want to help the Government prepare its case. Reversing a district court order which had enjoined the taking of depositions, the court said:

> Appellees urge that, as accountants, they "would lose their professional lives" by invoking the privilege. We are not sure that they would, if it were made clear that the privilege was claimed only on advice of counsel in order to prevent pretrial disclosure of their factual contentions. Whether or not they would, however, the same dilemma is faced by any witness in a civil or criminal trial who is himself under investigation or indictment for other crimes. Such a witness must either invoke his privilege against self-incrimination, or assume "the general duty to give what testimony one is capable of giving." See 8 Wigmore, Evidence § 2192 (McNaughton rev. 1961). It is for the same reason that a witness who has been given immunity from prosecution must testify although his testimony may expose him to such extra-legal pressures as "loss of job, expulsion from labor unions, state registration and investigation statutes, passport eligibility, and general public opprobrium." Ullmann v. United States, 350 U.S. 422, 430, 76 S.Ct. 497, 502, 100 L.Ed. 511 (1955); see Piemonte v. United States, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028

(1961). We cannot agree that "civilized standards of procedure and evidence," McNabb v. United States, supra, [318 U.S.] at 340, 63 S.Ct. at 612, require that a witness under indictment be given the option of nonappearance in any proceedings in related civil or criminal cases until his own trial is concluded.

United States v. Simon, *supra*, at 653.

We agree. The plaintiff in the instant case can, if he wants, assert the privilege in the disciplinary proceeding. He has no constitutional right to be relieved of the burden of that choice.[7]

Plaintiff next contends that by ordering the disciplinary proceeding to go forward first, the New Jersey Supreme Court will expose him to prejudicial pretrial publicity which will deprive him of a fair trial in the criminal case in violation of the Sixth and Fourteenth Amendments. He has annexed to his complaint copies of newspaper articles which have already appeared about his case, and he contends that a cumulation of publicity will be inevitable and will have the effects condemned in cases such as Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) and Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

This contention is, to say the least, premature. In the first place, the New Jersey Supreme Court has taken steps, which we have no reason to believe will be ineffective, to prevent the generation of publicity in the disciplinary proceeding. It has ordered that the hearing shall "be conducted *in camera* as in the case of a hearing before an ethics committee." Rule 1:20–3(b) of the New Jersey Court Rules provides:

All records, files, meetings and proceedings in all disciplinary matters shall be confidential and shall not be disclosed to or attended by anyone except as authorized by these rules or by the Supreme Court.

The court's order directs the Master to send all testimony and exhibits to it, together with his findings and recommendations. It is difficult to imagine what additional steps could be taken to prevent publicity, short, of course, of granting plaintiff the requested stay of the disciplinary hearing.

Moreover, the prejudice to which plaintiff refers would occur not because the press has reported his indictment, or may report the outcome of the disciplinary proceeding, but only because the trial court in the criminal case failed to adopt appropriate safeguards against such prejudice.

Some publicity about the indictment of a judicial officer, and about the outcome of a proceeding directed at his removal, is inevitable. Any attempt by the courts to prevent it entirely would raise serious First Amendment questions. There is nothing in plaintiff's papers from which we can conclude that the trial court which will hear the criminal case will not strike a proper balance between the First Amendment on the one hand and the Sixth and Fourteenth Amendments on the other. No motions have been made in the criminal case for continuance, change of venue, sequestration, or appropriate instructions.[8] Probably such motions should be deferred by the trial court to a time close to the trial of the indictment. United States v. Corallo, 284 F.Supp. 240 (S.D.N.Y.1968); United States v. Kahaner, 204 F.Supp. 921 (S.D.N.Y.1962). *A fortiori* we cannot anticipate their outcome now.

---

7. We need not decide whether or not Silver v. McCamey, 95 U.S.App.D.C. 318, 221 F.2d 873 (1955), has been overruled by United States v. Kordel, *supra*, since the former is factually distinguishable from our case.

8. See ABA PROJECT ON MINIMUM STANDARDS FOR CRIMINAL JUSTICE, STANDARDS RELATING TO FAIR TRIAL AND FREE PRESS pt. III, at 8–14, 112–149 (Tent. draft 1966).

Finally, plaintiff contends that the disciplinary hearing will afford to the state discovery in advance of trial, by forcing the disclosure of witnesses which he may call and subjecting them to cross-examination, and by disclosing to the state the thrust of his cross-examination of the state's witnesses. As with plaintiff's Fifth Amendment contention, similar prejudice, if it be prejudice, may occur respecting civil and criminal tax liability, civil and criminal antitrust violations, liability for civil and criminal fraud, and many other cases.

■ Undoubtedly there are cases in which a court in the exercise of its discretion should stay discovery in a civil action pending the disposition of a criminal case. See, e. g., Texaco, Inc. v. Borda, 383 F.2d 607 (3 Cir. 1967), where this court approved the exercise of such discretion by the district court in an antitrust case. But there is no constitutional requirement that this be done, and in the same case some of the limitations which the district court placed upon discovery were found to be an abuse of discretion. Texaco, Inc. v. Borda, *supra*, at 608. In United States v. American Radiator & Standard San. Corp., 388 F.2d 201, 204 (3 Cir. 1967), cert. denied, 390 U.S. 922, 88 S.Ct. 857, 19 L.Ed.2d 983 (1968), this court said, with respect to a contention similar to that advanced here:

> On the merits, we know of no rule or equitable principle that protects a defendant in a pending criminal prosecution from the disclosure, by another person in a separate civil action, of evidence which may later become part of the prosecution's case against him.

See also Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 52, 33 S.Ct.

9, 57 L.Ed. 107 (1912). Cases such as Campbell v. Eastland, 307 F.2d 478 (5 Cir. 1962), cert. denied, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963),[9] staying civil discovery against the government until the disposition of the criminal case, are not relevant. They rest on the policy of preventing defendants in criminal cases from using civil process to obtain information from the government's file which would in the criminal case be privileged. That discretionary rule lends no support to plaintiff's constitutional contentions.

■ While historically, and perhaps unfortunately, pretrial discovery in criminal cases has been limited, there is no absolute rule of constitutional law prohibiting it, even in the pending action. See, e.g., Fed.R.Crim.P. 16(c); New Jersey Rules Governing Criminal Practice, Rule 3:11–1 (Notice of Alibi), Rule 3:12 (Notice of Defense of Insanity), Rule 3:13–3(d) (Discovery by State); Rider v. Crouse, 357 F.2d 317, 318 (10 Cir. 1966); Jones v. Superior Court of Nevada County, 58 Cal.2d 56, 22 Cal.Rptr. 879, 372 P.2d 919 (1962); State v. Angeleri, 51 N.J. 382, cert. denied, 393 U.S. 951, 89 S.Ct. 372, 21 L.Ed.2d 362, 241 A.2d 3, 96 A.L.R.2d 1213 (1968).

We find no violation of the defendant's Fifth, Sixth or Fourteenth Amendment rights from the fact that the state may obtain some incidental discovery benefit in the course of the disciplinary proceeding.

The order of this court staying the disciplinary proceedings before Honorable James R. Giuliano, Judge, Superior Court of New Jersey will be vacated, and the order of the district court denying a preliminary injunction will be affirmed.

9. *See, e. g.*, United States v. One 1964 Cadillac Coupe De Ville, 41 F.R.D. 352 (S.D.N.Y.1966); United States v. $2,-437.00 United States Currency, 36 F.R.D. 257 (E.D.N.Y.1964); United States v. Steffes, 35 F.R.D. 24 (D.Mont.1964);

United States v. Maine Lobstermen's Ass'n, 22 F.R.D. 199 (D.Maine 1958); United States v. Linen Supply Institute of Greater New York, 18 F.R.D. 452 (S.D.N.Y.1955).